# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | **JUDGE RICHARD L. SPEER** |
| Thomas and Theresa Alexo | ) | |
| | ) | Case No. 10-3066 |
| Debtor(s) | ) | |
| | ) | (Related Case: 09-38108) |
| Fifth Third Bank | ) | |
| Plaintiff(s) | ) | |
| v. | ) | |
| Thomas J. Alexo | ) | |
| Defendant(s) | ) | |

## DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine Dischargeability. The Plaintiff's Complaint is brought pursuant to the statutory exceptions to dischargeability set forth in 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(C). At the Trial, the Parties were each given the opportunity to present evidence and make arguments that they wished the Court to consider in reaching its decision. At the conclusion of the Trial, this Court deferred ruling on the matter so as to afford the opportunity to thoroughly review the evidence presented, the arguments of the Parties, as well as the entire record in this case. The Court has now had this opportunity and, for the reasons set forth herein, finds that the Plaintiff has not sustained its evidentiary burden. Accordingly, the Plaintiff's Complaint will be Dismissed.

Fifth Third Bank v. Thomas J. Alexo
Case No. 10-3066

## FACTS

On November 2, 2009, the Debtor/Defendant, Thomas Alexo (hereinafter the "Debtor"), sought legal advice concerning difficulties he was experiencing with his personal finances. Not long thereafter, on November 20, 2009, the Debtor filed, together with his wife, a joint petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. At the time he filed his petition for relief, the Plaintiff/Creditor, Fifth Third Bank (hereinafter the "Creditor"), held a claim against the Debtor.

The Creditor's claim was based upon a prepetition extension of credit in the amount of $2,908.87. The claim arose on September 21, 2009, when the Debtor utilized a "convenience check" provided by the Creditor. The check was used by the Debtor to pay a preexisting debt owed to another creditor with whom he maintained a credit-card account. This transaction, although later revealed to the Trustee at the meeting of creditors, was not initially disclosed by the Debtor at the time he filed his petition for relief.

On the same date he wrote the convenience check, a letter was sent to the Debtor's wife informing her that her application for Social Security Disability had been approved and that she would be receiving a payment for approximately $12,000.00. Both the letter and the money were received a short time later. The Debtors disclosed this asset in their bankruptcy filing, claiming it as exempt, a position against which no party filed an objection.

At the time he filed for bankruptcy relief, the Debtor represented that he and his wife had a net monthly income of $2,763.00. This income was derived from two sources: the Debtor's employer; and Social Security Disability benefits received by the Debtor's wife. Against their income, the Debtor represented that he and his wife had necessary, monthly expenses of $3,174.00, leaving their household budget with a monthly shortfall of ($411.00). This budget did not include

**Fifth Third Bank v. Thomas J. Alexo**
**Case No. 10-3066**

any expense for servicing his unsecured debts which totaled just over $23,000.00. This state of financial affairs substantially reflects the Debtor's financial condition two months prior, when he wrote the convenience check provided by the Creditor.

## DISCUSSION

Before this Court is the Plaintiff's Complaint to Determine Dischargeability of Debt. Proceedings brought to determine the dischargeability of particular debts are deemed to be core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court has the jurisdictional authority to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1); § 1334.

The Plaintiff's Complaint to determine dischargeability is brought pursuant to § 523(a)(2)(A) and § 523(a)(2)(C) of the Bankruptcy Code. This first provision, § 523(a)(2)(A), operates so as to except from discharge any debt which arises from a debtor's dishonest conduct, thereby implementing a fundamental bankruptcy policy that only those debts which are honestly incurred may be discharged. *EDM Machine Sales, Inc. v. Kay Harrison (In re Harrison)*, 301 B.R. 849, 853 (Bankr. N.D.Ohio 2003). Normally, the party seeking to have a debt held nondischargeable bears the burden to establish, by at least a preponderance of the evidence, the nondischargeable character of the debt. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Section 523(a)(2)(A) is no exception. *Id*.

However, § 523(a)(2)(C), as also cited by the Creditor in support of its Complaint to determine dischargeability, reverses this allocation of the burden of proof under certain conditions, by providing, in relevant part:

(C)(i) for purposes of subparagraph (A)–

Page 3

> (I) consumer debts owed to a single creditor and aggregating more
> than $600 for luxury goods or services incurred by an individual
> debtor on or within 90 days before the order for relief under this title
> are presumed to be nondischargeable[.]

Consequently, if applicable, § 523(a)(2)(C) has the effect of requiring a debtor to bear the burden of showing that the debt does not qualify as one excepted from discharge under § 523(a)(2)(A). The provision is premised on the assumption that debtors, when incurring debts, do so with the intention of repaying them, and is designed to prevent debtors from "loading up" up on debt in contemplation of bankruptcy. *Milavetz, Gallop & Milavetz, P.A. v. United States*, — U.S. —, 130 S.Ct. 1324, 1336, 176 L.Ed.2d 79 (2010).

It is still, however, the plaintiff's burden to show that § 523(a)(2)(C) is applicable in the first instance. *Nissan Motor Acceptance Corp. v. Ferrell (In re Ferrell)*, 213 B.R. 680, 688 (Bankr. N.D.Ohio 1996). This is accomplished by the plaintiff showing the existence of six elements: (1) a consumer debt, (2) owed to a single creditor, (3) aggregating more than Six Hundred Dollars, (4) for luxury goods or services, (5) incurred by an individual debtor, (6) on or within 90 days before the filing of the petition. *Id.* For these elements, the only point of contention between the Parties centered on the fourth: whether the Debtor wrote the convenience check provided by the Creditor for "luxury goods or services."

The Bankruptcy Code does not define what constitutes luxury goods and services, but does deem that certain types of goods and services are not luxury purchases. Under § 523(a)(2)(C)(ii)(II), it is set forth that "the term 'luxury goods or services' does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor."

In this matter, the Debtor utilized the convenience check provided by the Creditor for just one transaction: to pay a preexisting credit-card obligation owed to another creditor. This type of

Page 4

transaction can hardly be viewed as one absolutely excluded from the definition of a luxury good or service. Particularly, nothing suggests that such a transaction is an absolute necessity; nor, is it indicative of the type of transaction that is reasonably necessary for support and maintenance.

However, the mere fact that the purchase of a good or service is not a necessity does not automatically mean that the purchase will be deemed a luxury. *Shah v. Shaw (In re Shaw)*, 294 B.R. 652, 655 (Bankr. W.D .Pa. 2003). Rather, decisions addressing the issue of luxury goods and services for purposes of § 523(a)(2)(C) have generally ascribed to such purchases a few characteristics. These include whether the purchase was extravagant, indulgent, and nonessential under the circumstances. *Compass Bank v. Meyer (In re Meyer)*, 296 B.R. 849, 865 (Bankr. N.D.Ala. 2003). Whether the purchase evidences some fiscal responsibility has also been considered as pertinent to a determination of whether the debt was incurred to obtain luxury goods and services. *John Deere Community Credit Union v. Feddersen (In re Feddersen)*, 270 B.R. 733, 736 (Bankr. N.D.Iowa 2001).

Overall, then, a purchase may not qualify as one automatically excluded from the definitional scope of a luxury good or service. At the same time, the purchase may not arise to the level to constitute a luxury good or service. A medium between the two parameters exists, where a transaction is neither fish nor fowl.

When a party uses a convenience check, they are, in essence, taking a draw on a line of credit. On its face, there is nothing particularly ostentatious about such a transaction. The use of a convenience check, thus, on its own cannot be said to be a luxury purchase. To the contrary, the use of a convenience check will often exhibit a degree of financial responsibility, tending to place the transaction outside the orbit of a 523(a)(2)(C) luxury good or service, especially if it is done to pay a preexisting debt for the purpose of obtaining more favorable repayment terms – *e.g.*, a lower interest rate. This would appear to be the situation which is before the Court.

Fifth Third Bank v. Thomas J. Alexo
Case No. 10-3066

At the Trial, the Debtor testified that his purpose in using the Creditor's convenience check was to close a credit-card account which carried a higher rate of interest on outstanding balances. While no evidence was offered to corroborate this statement, the Court has no reason to doubt the Debtor's testimony. It is common knowledge that convenience checks are often used by debtors to effectuate balance transfers to other accounts which offer more favorable repayment terms, a use often advertised and suggested by the party offering the convenience check. *See MBNA America Bank v. Meoli (In re Wells)*, 561 F.3d 633, 634 (6th Cir. 2009).

This, however, does not mean that the use of a convenience check to pay a preexisting debt will always place the transaction outside the scope of a § 523(a)(2)(C) luxury good or service. Instead, a further dynamic may come into play, one which was touched upon at the Trial with the positing of this question: What effect, if any, does the nature of the purchases made by the Debtor on the original credit-card obligation, as later satisfied through the convenience check provided by the Creditor, have on a § 523(a)(2)(C) determination? That is, if luxury goods and services were purchased by a debtor with a credit card, and the debtor later uses a convenience check provided by another creditor to satisfy the prior obligation, does the underlying nature of the original debt follow to the subsequent debt or is the causal relationship broken?

In this type of situation, there is authority to suggest that the causal relationship is not broken. *See Archer v. Warner*, 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003) (agreement, which settled and released creditors' prior state-law claim for fraud, could still constitute a nondischargeable debt under § 523(a)(2)(A)). In any event, in the instant case no evidence was offered regarding the nature of the purchases made by the Debtor on the original credit-card obligation. Consequently, such an issue is not before the Court.

On whole, therefore, the Court is left with just this one fact: The Debtor used the convenience check provided by the Creditor to pay a preexisting debt. Standing alone, however, the Court, for

Page 6

**Fifth Third Bank v. Thomas J. Alexo**
**Case No. 10-3066**

those reasons stated, cannot find that such evidence satisfies the Creditor's burden of showing that, in accordance with § 523(a)(2)(C), the Debtor purchased luxury goods and services within 90 days before filing for bankruptcy relief. As such, no presumption of fraud arises in this case. The matter before the Court, thus, now becomes whether, as averred in its Complaint, the Creditor can sustain its burden of showing that the Debtor, in using the provided convenience check, acted in a fraudulent matter for purposes of § 523(a)(2)(A).

> Section 523(a)(2)(A) provides:
>
> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

In order for a plaintiff to sustain their burden under § 523(a)(2)(A), the common law elements for fraud mut be shown to exist. *Field v. Mans*, 516 U.S. 59, 70 fn.9, 116 S.Ct. 437, 443, 133 L.Ed.2d 351 (1995 ("We construe the terms in § 523(a)(2)(A) to incorporate the general common law of torts, the dominant consensus of common-law jurisdictions, rather than the law of any particular State."). These elements, five in number, are: (1) the debtor made a false representation; (2) the debtor knew such representation to be false at the time they were made; (3) the representation was made with intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor's loss was the proximate result of the misrepresentation having been made. *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D.Ohio 2001).

Page 7

Fifth Third Bank v. Thomas J. Alexo
Case No. 10-3066

In this case, the Debtor, *sub silentio*, acknowledged the existence of the first, fourth and fifth elements. Hence, the only issue before the Court is whether, consistent with the second and third elements, the Debtor, knowing his representations to be false, acted with the requisite intent to defraud the Creditor.

For purposes of § 523(a)(2)(A), the mere breach of a promise to pay does not establish the existence of an intent to defraud. Instead, an intent to defraud will not exist unless the maker of the promise knows his statement to be false at the time the statement is made. *Clauss v. Church (In re Church)*, 328 B.R. 544, 547 (8th Cir. B.A.P. 2005). This determination is made using a subjective standard, requiring the court to consider the debtor, individually, as opposed to an objective, reasonable person standard *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). *See also Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997) ("A dumb but honest defendant does not satisfy the test of scienter."). Whether a debtor subjectively intended to perform as promised is a factually intensive inquiry and, since a debtor will rarely admit to acting in a fraudulent manner, circumstantial evidence will often be needed to determine if the debtor acted with the requisite intent. *Weeber v. Boyd (In Re Boyd)*, 322 B.R. 318, 324 (Bankr. N.D.Ohio 2004).

As circumstantial evidence of the Debtor's fraudulent intent, the Creditor's primary point in support of a finding of nondischargeability concerns the close proximity between these two events: the Debtor's utilization of the convenience check it provided; and (2) a short time later, the Debtor and his wife seeking Chapter 7 relief in this Court. For this purpose, neither Party disputes that the relevant dates are September 21, 2009, when the Debtor used the Creditor's convenience check to pay a preexisting debt, and November 20, 2009, when the Debtor and his wife filed their bankruptcy petition.

Page 8

Fifth Third Bank v. Thomas J. Alexo
Case No. 10-3066

The Creditor's concern over the timing of the events just mentioned is well justified. Debtors commonly seek bankruptcy relief after a protracted financial decline. Many debtors are, therefore, aware of the precariousness of their financial situation, and attendant inability to service more debt, in the time period leading up to their bankruptcy filing. It is also a basic facet of bankruptcy law that a debtor seeking relief under Chapter 7 of the Code seeks to escape their legal liabilities.

Consequently, even where no presumption of abuse arises under § 523(a)(2)(C), a short time interval between when a debt is incurred and when a debtor files for bankruptcy relief is a strong, and possibly dispositive indicator of an intent to defraud. *Rust v. Tellam (In re Tellam)*, 323 B.R. 661, 665 (Bankr. N.D.Ohio 2005). Furthermore, the shorter the time period between these two events, the stronger the indicator of fraud, with the time frames established by § 523(a)(2)(C) merely constituting an event horizon[1] beyond which the debtor is no longer afforded a presumption in favor of dischargeability.

In the instant case, given that less than two months elapsed between the salient dates, a strong inference of fraud exists. This inference is made even stronger by the fact that the Debtor first sought out the advice of legal counsel on November 2, 2009, thereby showing that the Debtor was prepared to seek a discharge of his obligation to the Creditor just six weeks after incurring the debt. *Chase Bank v. Brumbaugh (In re Brumbaugh)*, 383 B.R. 907, 913-14 (Bankr. N.D.Ohio 2007). Moreover, the inference of fraud becomes particularly defined when the financial situation of the Debtor, particularly his cash flow, at the time he utilized the convenience check from the Creditor is considered.

---

[1] In general relativity, an event horizon is a boundary in spacetime, most often an area surrounding a black hole, beyond which events cannot affect an outside observer. http://en.wikipedia.org/wiki/Event_horizon.

Page 9

Fifth Third Bank v. Thomas J. Alexo
Case No. 10-3066

On September 21, 2009, when the convenience check was used, the Debtor did not have the means by which to pay the debt, with his household budget showing a monthly shortfall of over $400.00. *See Palmacci v. Umpierrez*, 121 F.3d at 789 (circumstances from which fraud may be inferred include debtor's insolvency or some other reason to know that he cannot pay.). The Debtor, in fact, fully acknowledged this point, testifying that he no ability to repay the Creditor at the time he utilized the convenience check.

Under these conditions, where a debtor does not have the means to pay a debt incurred shortly before filing for bankruptcy relief, a *prima facie* case for fraud necessarily arises. As a peripheral matter, an additional aspect of this case further supports the Creditor's case. Specifically, and although ameliorated by its later disclosure, the Debtor, despite being required to do so, did not disclose in his bankruptcy filing his use of the convenience check.

To rebut the case for fraud made by the Creditor, the Debtor focused on one aspect of his financial situation: the lump-sum social security payment his wife received on account of her disability. According to the Debtor, he and his wife intended to use the funds received from social security to pay their obligation to the Creditor. However, the Debtor explained that he did not follow through with this plan because, although his wife received a lump-sum payment of $12,000.00, the settlement was not as large as anticipated, thus constraining their ability to pay the Creditor.

As an initial matter, it would be difficult not to notice a weakness with the Debtor's position. The lump-sum payment received from social security was $12,000.00, while the obligation owed to the Creditor was just under $3,000.00. The Debtor, thus, had the means by which to fully satisfy his obligation to the Creditor four times over. Notwithstanding, the Debtor's explanation is not devoid of credibility.

Page 10

Fifth Third Bank v. Thomas J. Alexo
Case No. 10-3066

First, insofar as it concerns the timeline of events in this case, the Debtor's explanation is not contradicted. In particular, the Debtor utilized the convenience check provided by the Creditor on September 21, 2009, with the letter sent by the social security administration concerning the $12,000.00 payment being sent the same day. It stands to reason, therefore, that the Debtor did not gain knowledge as to the size of the lump-sum payment until just after he utilized the convenience check provided by the Creditor.

Yet, there is one underlying fact which lends the upmost credibility to the Debtor's position. The Debtor did not personally enrich himself when he utilized the Creditor's convenience check. Instead, he merely replaced one debt with another, leaving the Debtor with the same amount of liabilities, just with different creditors. As this Court has previously observed: "it goes without saying that, in the absence of an immediate pecuniary gain, a debtor's motive to fraudulently engage in a transaction involving a balance transfer is dampened." *In re Brumbaugh*, 383 B.R. at 916. Importantly, for this purpose, nothing indicates that the credit card paid by the Creditor's convenience check was an insider to whom the Debtor could have felt a strong moral obligation to repay.

The Debtor's lack of any intent to defraud was also evident from his testimony at the Trial. In short, the Court, having had the opportunity to observe the demeanor of the Debtor at the Trial, found him to be sincere. The Debtor's lack of financial sophistication also stood out to the Court. In this regard, the Debtor's handling of his financial obligation to the Creditor, while hardly laudable, seems to be the result of trying to juggle to many financial balls which came falling down when the Debtor and his wife did not receive as much as they had anticipated from the social security administration.

For these reasons, the Court, while it does find a number of aspects of this case troubling, has lingering doubts that the Debtor subjectively intended to defraud the Creditor. Under this condition,

Page 11

Fifth Third Bank v. Thomas J. Alexo
Case No. 10-3066

the law requires that any doubt be resolved in favor of the Debtor. *XL/Datacomp v. Wilson (In re Omegas Group)*, 16 F.3d 1443, 1452 (6th Cir.1994). As such, the Court declines to enter a finding that the obligation incurred by the Debtor through his use of the convenience check provided by the Creditor is a nondischargeable debt.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the obligation incurred by the Defendant/Debtor, Thomas J. Alexo, to the Plaintiff/Creditor, Fifth Third Bank, be, and is hereby, determined to be a DISCHARGEABLE DEBT.

***IT IS FURTHER ORDERED*** that the Plaintiff's Complaint to Determine Dischargeability of Debt, be, and is hereby, DISMISSED.

Dated: August 11, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 12

# CERTIFICATE OF SERVICE

Copies were mailed this 11th day of August, 2010 to:

Thomas J. Alexo
1113 Earlwood
Oregon, OH 43616

Ty S. Mahaffey
8527 W Central Ave
Sylvania, OH 43560

Alison Anne Gill
655 Cooper Road
Westerville, OH 43081

                                                     /s/Diana Hernandez
                                          Deputy Clerk, U.S. Bankruptcy Court